UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO GASTELUM,<br><br>                                    Plaintiff,<br><br>v.<br><br>7-ELEVEN, INC.,<br><br>                                  Defendant. | Case No.:  3:25-cv-00637-TWR-AHG<br><br>**ORDER:**<br><br>**(1) RESOLVING ORDER TO SHOW CAUSE,**<br><br>**(2) ISSUING SANCTIONS AGAINST PLAINTIFF, and**<br><br>**(3) DENYING PLAINTIFF'S MOTION FOR SANCTIONS**<br><br>**[ECF Nos. 13, 20]** |

Before the Court is its Order to Show Cause. ECF No. 13. For the reasons set forth below, the Court issues sanctions against Plaintiff Fernando Gastelum ("Plaintiff").

## I.      BACKGROUND

On June 26, 2025, the Court required Plaintiff to show cause why he should not be sanctioned for publishing, or consenting to the publication of, a video of a confidential proceeding. ECF No. 13 at 3. Plaintiff was also required to show cause why he should not be sanctioned for representing that he is acting *in propria persona* when it appears that he

is being represented by Peter Strojnik, an attorney who has been disbarred by the State of Arizona and is not a member of the bar of this Court. *Id.* Plaintiff timely filed his response on July 1, 2025. ECF No. 17. Defendant 7-Eleven Inc. ("Defendant") timely filed its response on July 9, 2025. ECF No. 18. The Court held a hearing on August 11, 2025. ECF No. 27. Plaintiff and Defendant submitted supplemental briefing, as required by the Court, on August 15, 2025, and August 18, 2025, respectively. ECF Nos. 30, 32. This order follows.

## II.    LEGAL STANDARD

"[C]ourts retain broad discretion to control their dockets, and in the exercise of that power they may impose sanctions." *McGee v. Mansfield*, No. 2:21-cv-2216-KJM-KJN-PS, 2022 WL 16639130, at *2 (E.D. Cal. Nov. 1, 2022). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks omitted). Sanctions pursuant to the court's inherent authority are appropriate where a party engages in "a broad range of willful improper conduct." *See Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001); *see also* CivLR 83.1(a) (permitting a court to impose sanctions on a party who fails to comply with the court's local rules or any order of the court).[1] "When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a [] court must find either: (1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012); *see also Chambers*, 501 U.S. at 40–46 (courts may impose monetary sanctions "for willful disobedience of court order" in order to deter abuse of judicial process). "A determination that a party was willfully disobedient is different from a finding

---

[1] *See* CivLR 83.11(a) ("Any person appearing propria persona is bound by these rules of court and by the Fed. R. Civ. P.").

that a party acted in bad faith. Either supports the imposition of sanctions." *Evon*, 688 F.3d at 1035. Further, "a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Id*.

## III.    DISCUSSION

### A.    Video at Issue

On April 25, 2025, the Court issued an Order setting an Early Neutral Evaluation Conference ("ENE") and Case Management Conference for June 26, 2025. ECF No. 8. This district's Civil Local Rules provide that ENE proceedings "will be informal, off the record, privileged, and confidential." CivLR 16.1(c)(1)(b). The undersigned's Order setting the ENE stated that "[a]ll conference discussions will be informal, off the record, and confidential." ECF No. 8 at 2. In its Order, the Court required that the parties meet and confer at the subject premises before the ENE. Specifically, the Court ordered that "no later than May 28, 2025, counsel for the parties, and any unrepresented parties, **must meet and confer in person at the subject premises <u>regarding settlement</u>** of (1) the alleged premise violations, and (2) damages, costs and attorney fees." *Id*. at 3 (emphasis added). The parties then were ordered to lodge a Joint Statement with the Court via email, setting forth the results of the meet and confer. *Id*. The parties timely submitted their Joint Statement on May 20, 2025, and confirmed they had met and conferred at the premises on May 19, 2025. Email to Chambers (May 20, 2025, at 10:53 AM). In the Joint Statement, Plaintiff referenced, and included a link to, a video taken during the meet and confer that was recorded and posted to YouTube and Facebook by Peter Strojnik. Joint Statement at 1.

Based on the parties' description of the events and upon watching the video, the Court expressed its concerns and issued an Order to Show Cause to Plaintiff. ECF No. 13. The meet and confer was a settlement discussion ordered by the Court, and the video published those confidential proceedings. In its Order to Show Cause, the Court explained that "[a]ny sanctions with regard to the video will not be imposed if the video is taken down from all websites on which it was posted, and Plaintiff provides sworn confirmation of that,

on or before July 3, 2025." *Id*. As of the date of this Order, the video is still available on YouTube and Facebook.

        **B.**     **Plaintiff Consented to the Posting of a Video of a Confidential Settlement Proceeding**

        Though Plaintiff did not post the video of the confidential settlement proceeding to YouTube and Facebook himself, the Court finds that he consented to its publication. Beyond his repeated reposting of the YouTube link and Facebook group outlined below, Plaintiff took ***no action*** to remove the video, such as simply asking Mr. Strojnik to remove it. ECF No. 31 at 29. Had Plaintiff asked Mr. Strojnik to take down the video immediately upon realization that it violated the Court's order—regardless of whether Mr. Strojnik ultimately took down the video—the Court may have considered the continued posting of the video to indicate a lack of consent on Plaintiff's part. It would have at least demonstrated a minimal attempt to comply with this Court's Order. At the Show Cause hearing, however, when asked by the Court whether he had requested that Mr. Strojnik take the video down at any time, either after it was posted or after Plaintiff received the Order to Show Cause, Plaintiff admitted in a flippant and unapologetic manner that he had not done so. *Id*. at 37–39. Plaintiff's responses and mannerisms during the hearing[2] show that his failure to take any action approximately two months after the Court issued its Order to Show Cause, which explicitly explained that the video violated the Court's Order, was intentional. *See id*. at 6–8, 29, 37–39.

---

[2] *See, e.g.*, ECF No. 31 at 38–39 (in response to the Court's questioning regarding why he took no action to even ask Mr. Strojnik to take the video down, Plaintiff testified that, "I understand what you're saying, but I stand by what I said. I mean, I can't control what [Mr. Strojnik] does. Because, I don't know if asking him would have done any good." The Court responded, "You never even tried. Having been told by the Court that it was a violation, you took no action, no action to try and bring it into compliance. … If you have respect for this Court, … you wouldn't have any hesitation, [you would say to Mr. Strojnik,] 'Boy, that was a mistake. Please take it down.' That's not what you did. And you've been defiant in your refusal to even ask today").

### C.    Plaintiff Acted Deliberately in Reposting the Video before the ENE

During the Show Cause hearing, Plaintiff explained that "I had nothing to do with [the video] being put on YouTube. *I mean, I saw it, and I thought the Court might be interested in seeing the transaction that happened*. But I had nothing to do with putting it on YouTube." ECF No. 31 at 29 (emphasis added). Plaintiff stayed true to his representation and repeatedly reposted the video before the June 26, 2025, ENE.

On May 20, 2025, Plaintiff included a YouTube link to the video in his portion of the Joint Statement. Email to Chambers (May 20, 2025, at 10:53 AM). On June 5, 2025, Plaintiff included the YouTube link, and public Facebook page where the video was also posted, in his complaint *in a related matter*. *Gastelum v. 7-Eleven*, No. 25-cv-1463-TWR-LR, ECF No. 1 at 5, 5 n.1. On June 6, 2025, Plaintiff included the YouTube link and public Facebook page in his Reply in support of his Motion for Summary Judgment *in another related matter*. ECF No. 32-2; *see Gastelum v. John & Karen Skinner Trust*, No. 25-cv-152-TWR-LR, ECF No. 15 at 7, 7 n.3. On June 16, 2025, Plaintiff included the YouTube link and public Facebook page in his portion of the Joint Case Management Statement. ECF No. 11 at 3. On June 16, 2025, Plaintiff also included a description of the video and reference to its availability on YouTube and Facebook in his initial disclosures, which he filed. *Id.* at 7. On June 18, 2025, Plaintiff included the YouTube link in a confidential submission to the Court. Email to Chambers (June 18, 2025, at 9:23 AM). On June 18, 2025, Plaintiff included the YouTube link in his Motion for Summary Judgment *in a third related matter*. ECF No. 32-3; *see Gastelum v. 7-Eleven, Inc.*, No. 25-cv-566-TWR-LR, ECF No. 17 at 12 n.3, 12–13.

The Court finds that Plaintiff was aware[3] that the meet and confer was a court-

---

[3] The Court also notes that Plaintiff is not an inexperienced *pro se* litigant. "As of November 12, 2025, Plaintiff had filed more than 60 cases in this District in 2025 alone[.]" ECF No. 39 at 5 n.2. As such, Plaintiff is familiar with this district's Local Rules and ENE process.

ordered confidential settlement proceeding. Despite that, Plaintiff deliberately violated the Court's Order by consenting to the video's recording and publication, as evidenced by Plaintiff's repeated reposting of the YouTube link in this case and others.

### D. Plaintiff Acted Deliberately in Reposting the Video before the Show Cause Hearing

On June 26, 2025, the Court issued an Order to Show Cause ("OSC"). ECF No. 13. In the OSC, the Court explained, in detail, that the recording and publication, or consent thereto, of the confidential settlement proceeding was a violation of this district's Local Rules and this Court's Order setting the ENE. *Id*. at 1–3. The Court also provided Plaintiff an opportunity to avoid sanctions altogether "if the video is taken down from all websites on which it was posted, and Plaintiff provides sworn confirmation of that, on or before July 3, 2025." *Id*. at 3. Plaintiff did not, however, make any attempt to address his violations before the August 11, 2025, Show Cause hearing. In fact, he did just the opposite.

On July 1, 2025, Plaintiff filed his response to the OSC, which included the YouTube link in Plaintiff's portion, and the YouTube link, public Facebook group, and description of the video in Mr. Strojnik's portion. ECF No. 17 at 1; ECF No. 17-1 at 2–4, 4 n.1. On July 12, 2025, Plaintiff filed a motion for sanctions, which included the YouTube link and an uncertified transcription of the video in Plaintiff's portion, and the YouTube link and video transcription in Mr. Strojnik's portion. ECF Nos. 20, 20-1. On July 15, 2025, Plaintiff filed an amended complaint *in a related matter*, which included the YouTube link and public Facebook page. ECF No. 32-5; *see Gastelum v. 7-Eleven*, No. 25-cv-1463-TWR-LR, ECF No. 10 at 9, 9 n.1. On August 2, 2025, Plaintiff published the YouTube link and the public Facebook page at least four times in his opposition to the defendant's motion to dismiss in that related matter. ECF No. 32-6; *see Gastelum v. 7-Eleven*, No. 25-cv-1463-TWR-LR, ECF No. 14. By August 11, 2025, Plaintiff unapologetically admitted that ***at no point*** since he became aware the video was published or after he received the Court's OSC for sanctions regarding the publication of the video, had he asked Mr. Strojnik to remove

1    the video from the public websites. ECF No. 31 at 29, 38–39.

2          Even if the Court were to excuse Plaintiff's conduct before the OSC was issued,

3    Plaintiff's conduct still warrants sanctions. *After* specifically being notified that the video,

4    and any consent to the publication of such video, was a violation of this district's Local

5    Rules and this Court's Order, Plaintiff repeatedly reposted the YouTube link in this case

6    and others. The Court finds that Plaintiff acted deliberately and willfully in violating the

7    Court's orders.

8                    **E.    Plaintiff Acted Deliberately by Continuing to Post the Video after**

9                    **the Show Cause Hearing**

10          After the August 11, 2025, Show Cause hearing, the Court provided Plaintiff the

11   opportunity to submit supplemental briefing. ECF No. 29. Plaintiff included the YouTube

12   link three times in his August 15, 2025, supplemental brief, and attached email

13   correspondence where Mr. Strojnik included the YouTube link as well. ECF No. 30 at 2;

14   ECF No. 30-1 at 1. On September 12, 2025, Plaintiff filed his discovery responses[4] in the

15   instant matter during a discovery dispute, which included three YouTube links and multiple

16   references to the video. ECF No. 36.

17          The Court, in no uncertain terms, expressed its deep frustration with Plaintiff's

18   actions and inaction during the Show Cause hearing. ECF No. 31 at 37–39. Even after

19   acknowledging that he should have asked Mr. Strojnik to take the video down,[5] Plaintiff

20   *still* continued to repeatedly repost the video. The Court finds that Plaintiff acted

21   deliberately and willfully in violating the Court's order. *Cf. Humphries v. Button,* No. 2:21-

22

23

24   [4] Of note, Plaintiff's discovery responses were served on August 11, 2025, the day of the
25   Show Cause hearing. ECF Nos. 36-1 at 17; 36-2 at 12; *see* ECF No. 32-7 at 9.

26   [5] ECF No. 31 at 52 ("I agree, I should have asked him, when you first ordered that I ask
     him to take that down. All I can say is, at the time, I was not aware that he was taking the
27   video. But once I became aware of it, that it was posted, I agree, I should have asked him
     to take it down. Again, I apologize.").
28

cv-01412-ART-EJY, 2025 WL 509254, at *4 (D. Nev. Feb. 14, 2025) ("defendant's failure to abide by Court orders regarding the use and disclosure of confidential information is inexcusable and has rendered the litigation of this action needlessly complicated and expensive, and has unjustifiably consumed a disproportionate amount of judicial resources. [] The Court is frustrated by defendants' refusal to take seriously, and therefore comply with, what the Court has plainly stated.") (internal citation and quotation marks omitted).

### E.    Appropriate Sanction

Next, the Court will assess which, if any, sanctions should be imposed on Plaintiff and/or Mr. Strojnik.

#### 1.    *Plaintiff*

As discussed above, the Court finds that Plaintiff's repeated filing of the YouTube video link on the public docket of this case and other cases is in direct contradiction with the Court's Order setting the ENE, the Court's OSC, and this district's Local Rules. Plaintiff's actions show a disregard for the Court and evidence that he consented to the video's publication.

The Court finds that a reasonable and fair sanction, to deter Plaintiff from future noncompliance with court orders, is to sanction Plaintiff for each day that he knew the video was posted and did not ask for it to be taken down.[6] Plaintiff testified that he watched the video "a couple of days" after it was posted online. ECF No. 31 at 17; *see* ECF No. 13 at 1 (the meet and confer at issue occurred on May 19, 2025). Since the Court seeks an exact date, the Court will use the first date that Plaintiff published the YouTube link in a court submission: May 20, 2025, in Plaintiff's portion of the Joint Statement. Email to

---

[6] There is no evidence before the Court that Plaintiff posted the video or has account permissions to the YouTube or Facebook account where the video was uploaded by Mr. Strojnik. As such, though the video remains online, the Court has narrowly tailored its sanction to the actions that are within Plaintiff's control—i.e., asking for the video to be removed, even if the request was denied.

Chambers (May 20, 2025, at 10:53 AM).  Plaintiff provided documentary evidence to the Court that he asked Mr. Strojnik via email to remove the YouTube video[7] on August 11, 2025. ECF No. 30-1 at 1–2. Thus, Plaintiff was aware of the video and did not take any action for 83 days.

The Court is cognizant that coercive civil contempt sanctions—i.e., a per diem fine or prospective sanctions—"must provide a 'subsequent opportunity to reduce or avoid the fine through compliance.' [] Upon the contemnor's compliance, the coercive sanction ceases." *Holmes v. Estock*, No. 16-cv-2458-MMA-BLM, 2022 U.S. Dist. LEXIS 91621, at *5 (S.D. Cal. May 18, 2022) (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994)). Here, in response to the Court's Order following the Show Cause hearing, Plaintiff requested that Mr. Strojnik remove the video; as such, a coercive sanction would be moot. The Court will, instead, consider the number of days that Plaintiff intentionally took no action regarding the video to craft a fair sanction.

Other courts have routinely sanctioned parties $100 per day for noncompliance with court orders. *See Flores v. City of Bakersfield*, No. 1:24-cv-00229-KES-CDB, 2025 WL 1768520, at *2 (E.D. Cal. May 30, 2025) (sanctioning plaintiff $100 per day for noncompliance with court order requiring filing of a stand-alone amended complaint); *Est. of Ingle v. Kern Cnty. Hosp. Auth.*, No. 1:25-cv-377-JLT-CDB, 2025 WL 1549020, at *2 (E.D. Cal. May 30, 2025) (sanctioning defendant $100 per day for noncompliance with court order requiring filing of a consent form); *Holmes v. Estock*, No. 16-cv-2458-MMA-BLM, 2022 U.S. Dist. LEXIS 91621, at *4 (S.D. Cal. May 18, 2022) (collecting cases that imposed $100 per diem fines to coerce future compliance). Here, however, $100 per day for the 83 days Plaintiff began publishing the link in his filings and took no action to get the video taken down is $8,300, which the Court finds disproportionate. The Court notes that the period of time between the Court's issuance of the June 26, 2025, Order to Show

---

[7] The Court notes that Plaintiff did not ask Mr. Strojnik to remove the Facebook video.

Cause, which clearly explained that the publication of the video was a violation of the Local Rules and the Court's Order, and the date Plaintiff requested the video be removed is 46 days. One hundred dollars per day for 46 days is $4,600, which the Court finds this to be a more commensurate figure.

The Court also considers the number of times that Plaintiff published the YouTube link in his court submissions and filings on the public docket. The Court is aware of twelve court submissions made by Plaintiff, which include the YouTube link 19 times. *See* Email to Chambers (May 20, 2025, at 10:53 AM); *Gastelum v. 7-Eleven*, No. 25-cv-1463-TWR-LR, ECF No. 1 at 5, 5 n.1 (June 5, 2025); *Gastelum v. John & Karen Skinner Trust*, No. 25-cv-152-TWR-LR, ECF No. 15 at 7, 7 n.3. (June 6, 2025); ECF No. 11 at 3 (June 16, 2025); Email to Chambers (June 18, 2025, at 9:23 AM); *Gastelum v. 7-Eleven, Inc.*, No. 25-cv-566-TWR-LR, ECF No. 17 at 12 n.3, 12–1. (June 18, 2025); ECF No. 17 at 1 (July 1, 2025); ECF No. 20 (July 12, 2025); *Gastelum v. 7-Eleven*, No. 25-cv-1463-TWR-LR, ECF No. 10 at 9, 9 n.1 (July 15, 2025); *Gastelum v. 7-Eleven*, No. 25-cv-1463-TWR-LR, ECF No. 14 (August 2, 2025, included YouTube link four times); ECF No. 30 at 2 (August 15, 2025, included YouTube link three times); ECF No. 36 (September 12, 2025, included YouTube link three times). One hundred dollars per YouTube link publication would equal $1,900, and the figure would nearly double, to $3,100, if it included Plaintiff's publication of the public Facebook group.

The Court next turns to Plaintiff's supplemental briefing for guidance regarding the amount of sanctions to impose. During the Show Cause hearing, the Court asked Plaintiff: "The question is, what's the appropriate sanction? Monetary sanctions for every day you have not asked him to take the video down?" ECF No. 31 at 38 (admonishing Plaintiff for not asking Mr. Strojnik to take the video down, even after Plaintiff received the Order to Show Cause, which had stated that if the video was taken down, no sanctions would be imposed). Plaintiff did not respond regarding the appropriate sanction, and instead doubled-down regarding his failure to ask Mr. Strojnik to take the video down. *Id.* at 38 ("I stand by what I said. I mean, I can't control what he does. Because I don't know [] if asking

him would have done any good."). Since the Court permitted supplemental briefing from Defendant regarding additional information relevant to the Court's consideration, such as Plaintiff's publication of the YouTube link in other cases and metadata showing that Mr. Strojnik edited certain documents, the Court "g[a]ve Plaintiff the opportunity to provide supplemental briefing as well, regarding the nature of the sanctions the Court can impose." ECF No. 29. at 1. A second time, Plaintiff did not address the nature of the potential sanctions. Instead, in his supplemental brief, Plaintiff argued that, "[a]t the hearing on August 11, 2025, the evidence confirmed that Plaintiff was not involved in the 'publishing, or consenting to the publication of' the video[.] Therefore, no sanctions are warranted." ECF No. 30 at 2. Plaintiff's conclusory statement is not enough to avoid sanctions. Additionally, in his supplemental brief, Plaintiff inserted the YouTube video link three times, illustrating his willful disregard for the Court's repeated admonition that the video of a confidential settlement proceeding was a violation of the Court's Order and this district's Local Rules; and further demonstrating that Plaintiff was, in fact, actively consenting to the publication of the video.

Upon due consideration, the Court will impose a $4,500 sanction. To reach its decision, the Court considered Plaintiff's willful disregard for the undersigned's Orders and this district's Local Rules, as he repeatedly reposted the YouTube link even after being warned of sanctions. The Court is cognizant that Plaintiff did not record the video and did not post the video online—though his actions show that he consented to the publication—and has reduced the sanction accordingly. *See Harmon v. City of Santa Clara*, 323 F.R.D. 617 (N.D. Cal. 2018) (sanctioning plaintiff's counsel $69,756.31 when they uploaded confidential body worn camera footage to YouTube and sent the link to the media after the settlement had been approved by City Counsel); *accord Boyd v. County of San Diego*, No. 7-2023-00002923-CU-CR-CTL, 2024 Cal. Super. LEXIS 16919, at *1, *5 (Cal. Super. Ct. June 7, 2024) (sanctioning plaintiff $4,949.60 when he posted a YouTube video containing a document marked confidential pursuant to a protective order, ordering $3,000 to be paid immediately and the remainder to be paid after trial). The $4,500 figure represents a $54.22

penalty for each of the 83 days from when Plaintiff began publishing the YouTube link in his filings until he took action to get the video taken down. Alternatively, the $4,500 figure represents a $97.82 penalty for each of the 46 days after the Court issued its Order to Show Cause that Plaintiff took no action and did not ask Mr. Strojnik to take down the video, despite the Court's explanation and admonishment. Notably, the $4,500 figure represents a $236.84 penalty for each time Plaintiff included the YouTube link in court submissions. As it has discussed above, the Court finds Plaintiff's continued publication of the YouTube link in his court submission and public filings—particularly in other cases—to be willful, deliberate, and deserving of sanctions.

The Court is also cognizant that the video at issue did not disclose any settlement positions. *See Shields v. Fed'n Internationale De Natation*, No. 18-cv-07393-JSC, 2022 WL 298575, at *3 (N.D. Cal. Feb 1, 2022) (ordering sanctions when sur-reply disclosed confidential settlement communications in an attempt to argue that the named plaintiffs were not adequate class representatives, noting that "FINA's conduct has damaged the entire ADR program of the Northern District of California and thus the administration of justice"); *Williams v. County of San Diego*, No. 17-cv-00815-MMA-JLB, 2021 WL 3619876, at *1 (S.D. Cal. Aug. 16, 2021) (sanctioning plaintiff because she violated her obligation to keep statements made at the ENE confidential "by repeatedly citing representations allegedly made by Defendant's counsel at the ENE in her motion to compel"); *Citizens Dev. Corp. v. County of San Diego*, No. 3:12-cv-334-GPC-KSC, 2019 WL 13166660, at *1 (S.D. Cal. Aug. 13, 2019) (referencing previous order to show cause, where counsel was sanctioned $500 to be paid to the court[8] and $4,192.50 to be paid to opposing counsel,[9] for including a settlement demand in a filing regarding discovery disputes). However, the Court still finds that sanctions are warranted. The Court has the

---

[8] *See* No. 3:12-cv-334-GPC-KSC, ECF No. 319.

[9] *See* No. 3:12-cv-334-GPC-KSC, ECF No. 385.

inherent authority to regulate its docket and achieve the orderly and expeditious disposition of its cases. The purpose of the court-ordered settlement discussion during the meet and confer at the subject premises is to assist with early resolution of the matter, either before or during the ENE. Here, however, Plaintiff brought a disbarred attorney, Mr. Strojnik, with him to the meet and confer as his representative. Mr. Strojnik unnecessarily inserted himself in the discussion with opposing counsel, caused a ruckus, and posted a selectively edited video meant to cast opposing counsel in a negative light. ECF No. 31 at 44. Instead of managing Mr. Strojnik as his representative, Plaintiff supported his misconduct by repeatedly including links to the video in numerous filings, spanning multiple cases. *Cf. Lowry v. Metropolitan Transit Board*, No. 09-cv-898-BTM-WVG, 2013 WL 4046657, at *2 (S.D. Cal. Aug. 5, 2013) (finding the *pro se* litigant "ha[d] shown a continued lack of respect for the judicial process that he himself initiated"). Thus, instead of focusing on early resolution, the Court has expended its time and resources on an ancillary matter. As such, the Court will use its inherent authority to control its docket and promote future compliance with court orders.

Further, the recording, posting, consenting to the publication, and participating in the publication of a court-ordered settlement discussion "undermines the trust jurists of this Court have earned in the legal community and diminishes the integrity and effectiveness of the Settlement Conference process." *Century Sur. Co. v. 350 W.A., LLC*, No. 05-cv-1548-L-LSP, 2008 WL 1787491, at *3 (S.D. Cal. Apr. 16, 2008) (denying motion for reconsideration of $500 sanctions order when counsel had included confidential settlement communications in one motion filing, explaining that, "[g]iven the importance of preserving the integrity of the Court and the Settlement Conference process, the imposition of sanctions as to Mr. Vivoli was proper"). The Court reiterates its concern regarding Plaintiff's shifting answers, flippant mannerisms, willful defiance, and nonchalance at the gravity of the matter, which reinforces the Court's finding that sanctions are warranted here.

/ /

Therefore, the Court **ORDERS** that Plaintiff pay **$4,500.00** to the "Miscellaneous Fines, Penalties and Forfeitures, Not Otherwise Classified, fund of the United States Treasury" by __December 26, 2025__. *See* CivLR 83.1(b). Plaintiff must mail the payment to Clerk of the Court, 333 West Broadway, Suite 420, San Diego, CA 92101, or pay in person at the Clerk's Office on the Fourth Floor. Checks must be made payable to "Clerk, U.S. District Court," and must provide the case number (3:25-cv-637-TWR-AHG) on the memo line of the check. Plaintiff is ordered to file a Notice of Payment no later than __January 2, 2026__, confirming that he made the required payment.

Defendant contends that Plaintiff should be sanctioned, and also mentions that the Court's order "should include … a finding that he is a 'vexatious litigant.'" ECF No. 32 at 8. While courts may *sua sponte* declare a party a vexatious litigant, before imposing a vexatious litigant bar, a court must: "(1) give litigants notice and 'an opportunity to oppose the order before it [is] entered;' (2) compile an adequate record for appellate review, including 'a listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed;' (3) make substantive findings of frivolousness or harassment; and (4) tailor the order narrowly so as 'to closely fit the specific vice encountered.'" *Block v. Wash. State Bar Ass'n*, 860 F. App'x 508, 510 (9th Cir. July 2, 2021) (quoting *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1062 (9th Cir. 2014)). These four requirements are "strictly enforce[d]" by the Ninth Circuit, since such an order "affects a litigant's fundamental right to access the courts." *Block*, 860 F. App'x at 510. As such, with the record presently before it, the Court declines to address whether Plaintiff is a vexatious litigant at this time.

### 2. *Mr. Strojnik*

Based on the Court's review of the California State Bar website, Mr. Strojnik is not licensed to practice law in California. *Attorney Search*, STATE BAR OF CALIFORNIA, https://apps.calbar.ca.gov/attorney/LicenseeSearch/QuickSearch?FreeText=peter%20stroj

nik (last visited Nov. 25, 2025).[10] Mr. Strojnik was disbarred by the State of Arizona effective May 10, 2019, for "extortionate and ethically suspect" conduct in filing "thousands of lawsuits against small businesses alleging minor violations of the Americans with Disabilities Act." ECF No. 14 at 4–6 (citing *Mr. Peter Strojnik*, STATE BAR OF ARIZONA, https://www.azbar.org/for-legal-professionals/practice-tools-management/member-directory/?m=peter-strojnik-38576 (last visited Nov. 25, 2025)). The Court is concerned that, despite his disbarment in Arizona and lack of license in California,[11] Mr. Strojnik is acting as a *de facto* lawyer for Plaintiff in this case, even though Plaintiff represented to the Court that he is acting *in propria persona*. For example, in the Joint Statement, Defendant alleged that: "Mr. Strojnik continually interrupted any discussions [during the meet and confer] and told Plaintiff what he should do and say. He instructed Plaintiff not to answer certain questions and stated that 7-Eleven would be required to notice Plaintiff's deposition if it wanted some of the information asked for." Joint Statement at 2; *see also* ECF No. 31 at 16 (in response to the Court's question regarding whether Plaintiff authorized Mr. Strojnik to speak on his behalf during the meet and confer, Plaintiff testified that "I believe I told Mr. Orr that if Mr. Strojnik [] feels he has something to say, he is welcome to say it").

During the Show Cause hearing, the Court questioned Plaintiff regarding his own involvement in the case and whether he was receiving assistance from Mr. Strojnik. *See* ECF No. 31 at 5–36. The Court found Plaintiff's answers to be unsatisfactory, and observed that Plaintiff clearly has someone helping him with his legal documents. ECF No. 31 at 36 (summarizing Plaintiff's shifting, inconsistent stories and explanations). For example,

---

[10] The only "Peter Strojnik" who is identified as authorized to practice law in California is Peter Kristofer Strojnik, whom the undersigned believes based on appearances before her to be Mr. Strojnik's son.

[11] California Business & Professions Code section 6125 provides that "[n]o person shall practice law in California unless the person is an active licensee of the State Bar."

Plaintiff's motion for sanctions includes a declaration from Mr. Strojnik. ECF No. 20. The motion and declaration are almost identical; however, during the Show Cause hearing, Plaintiff could not identify which document was prepared first. ECF No. 31 at 34–35. Plaintiff later testified that Mr. Strojnik drafted his own declaration, and that Plaintiff drafted the motion before he knew Mr. Strojnik would need a declaration. *Id.* However, Plaintiff provided no explanation as to why the two documents were almost identical, if each was drafted separately from one another.

The Court also has concerns that, instead of receiving assistance, Plaintiff may not be drafting any of his legal documents at all.[12] For example, on September 16, 2025, ***over a month after*** the Show Cause hearing,[13] Plaintiff emailed the Court a Word document of a Joint Discovery Chart regarding the parties' discovery disputes. Email to Chambers (Sept. 16, 2025, at 12:02 PM); *see* ECF No. 35 (requiring a joint chart to be emailed to the Court in Word format to assist with resolution of numerous discovery disputes). Court staff viewed the properties of the Word document, which show "Peter Strojnik" as the "author" and specifies that the document was "last modified by" "Peter Strojnik." *Id.* Defendant also provided examples of similar document properties of numerous other Word documents

_____

[12] Defendant suspects that Mr. Strojnik has access to Plaintiff's email account, explaining that "when I transact through email, I get a very strong feeling I'm not actually talking to Mr. Gastelum, I'm talking to Mr. Strojnik." ECF No. 31 at 42. The Court notes that the email address used by Plaintiff to communicate with the Court and opposing counsel is different from the email address used by Plaintiff to communicate with Mr. Strojnik. *See* Email to Chambers (Aug. 15, 2025, at 5:01 PM) (email to Court from Plaintiff at fernandog8899@gmail.com, attaching proof of Plaintiff's email request to Mr. Strojnik to take down the video, which was sent to Mr. Strojnik by nando0526@msn.com); *see* ECF No. 30-1. The Court, however, does not have enough information at this time to form an opinion on the matter.

[13] During the August 11, 2025, Show Cause hearing, the Court admonished Plaintiff that Mr. Strojnik may not help him in any way for the remainder of this case, whether it be driving him, assisting with documents, or providing legal information. ECF No. 31 at 45–46, 48, 54.

purported to have been drafted by Plaintiff, but were instead "last modified by" Mr. Strojnik. *See* ECF No. 32-9 at 2; ECF No. 32-10 at 2; ECF No. 32-11 at 2; ECF No. 32-12 at 2; ECF No. 32-13 at 2; ECF No. 32-14 at 2; ECF No. 32-15 at 2.

Additionally, though Plaintiff insisted that Mr. Strojnik was solely his driver, Plaintiff also referred to Mr. Strojnik as a "strategic consultant." ECF No. 31 at 41, 48 (Plaintiff admitted that Mr. Strojnik "checks the stores for me, to see, firsthand, if they are accessible to me to go into with my wheelchair," to which the Court responded, "[t]hat sounds a lot like a lawyer; helping understand what the facts and the law are, and advising you on whether you can bring a complaint. … That's way beyond just being your driver."). The Court also notes that ***Mr. Strojnik*** contacted Chambers to request a continuance of the first Show Cause hearing on Plaintiff's behalf. Email to Chambers (July 22, 2025, at 9:30 AM); Email to Chambers (July 22, 2025, at 1:58 PM).

Upon consideration of the totality of the circumstances, the Court is not persuaded that Plaintiff is controlling the litigation, and strongly suspects that Mr. Strojnik is acting as Plaintiff's *de facto* lawyer. The Court finds Plaintiff's answers at the hearing regarding the same to be uncredible, and that he likely is receiving help from Mr. Strojnik although he testified otherwise, as evidenced by the document properties mentioned above and Mr. Strojnik's own actions in this matter. The Court, however, will not issue monetary sanctions in that regard. Instead, the Court **ORDERS** that Mr. Strojnik is barred from accompanying Plaintiff to any Court-mandated occurrence in this case, or assisting Plaintiff with this case in any manner, as the Court finds him a threat to the integrity of the proceedings. *See Strojnik v. 1315 Orange Ave LLC*, No. 3:19-cv-1991-LAB-JLB, 2021 WL 4460767, at *7 (S.D. Cal. Sept. 29, 2021) (finding Mr. Strojnik to be a vexatious litigant, enjoining him from filing ADA claims in the Southern District of California without first obtaining court permission, and explaining that "[Mr.] Strojnik's utter disregard for court orders [] is nothing short of an abuse of the judicial process, and he shouldn't be permitted to continue with this exploitative behavior"); *see also Mr. Peter Strojnik*, State Bar of Arizona, https://www.azbar.org/for-legal-professionals/practice-

tools-management/member-directory/?m=peter-strojnik-38576 (last visited Nov. 25, 2025) (State Bar of Arizona contended that Mr. Strojnik "engaged in conduct that caused immediate and substantial harm to clients, the public, and the administration of justice"). Plaintiff is entitled to have a person assist him with his claims, but Mr. Strojnik may not be that person.

## IV.    PLAINTIFF'S MOTION FOR SANCTIONS

On July 12, 2025, Plaintiff filed a motion seeking that the Court issue an Order to Show Cause for sanctions against Defendant's counsel. ECF No. 20. There, Plaintiff transcribed the video of the confidential meet and confer and argued that Defendant's counsel perjured himself in his response to the Court's June 26, 2025, Order to Show Cause. ECF No. 30 (referencing ECF No. 18). Specifically, Plaintiff takes issue with Defendant's counsel's assertion that "I asked Strojnik if he was aware that the meeting was privileged and that recording was improper. Strojnik stated he did not care and continued to record. I did not agree to the recording of the meeting." ECF No. 18-1 at 3. Plaintiff disputes the events described and, thus, "requests the Court to order Mr. Orr to show cause why [t]he Court should not refer Mr. Orr to the State Bar of California and the Attorney General for committing perjury and displaying lack of candor." ECF No. 20 at 5. As Plaintiff is a *pro se* litigant, the Court liberally construes his filing as a motion for sanctions. *Gallusz v. LPP Mortg., Inc*., No. 25cv885-JLS-BLM, 2025 WL 1476555, at *4 (S.D. Cal. May 21, 2025) (construing *pro se* plaintiff's "request that this Court issue an Order to Show Cause why sanctions should not be imposed against Defendant" as a motion for Rule 11 sanctions); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (*pro se* filings held to "less stringent standards than formal pleadings drafted by lawyers"); *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (explaining that courts construe *pro se* litigants' pleadings liberally).

Federal Rule of Civil Procedure 11(c) imposes strict procedural requirements for parties to follow when they move for sanctions. To comply with the Rule, Plaintiff was required to serve his motion on Defendant with a demand for retraction of the statements in his declaration, and then to allow Defendant at least twenty-one days to retract the

declaration before filing the motion with the court. *See* FED. R. CIV. P. 11(c)(2). Plaintiff did not follow this procedure. The declaration at issue was filed by Defendant on July 9, 2025, and Plaintiff filed his motion for an order to show cause three days later, on July 12, 2025. ECF Nos. 18, 20. The procedural requirements of Rule 11's safe harbor provision are mandatory. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 789 (9th Cir. 2001) (citing *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998)). As such, Plaintiff's motion could be denied for that reason alone. *See, e.g.*, *Gallusz*, 2025 WL 1476555, at *4 (construing *pro se* plaintiff's request for an order to show cause as a motion for Rule 11 sanctions, and denying motion for failure to comply with Rule 11(c)(2) and upon cursory review of the merits); *Martinez v. Riser*, No. CV-22-5146 PA-KSx, 2023 WL 6787439, at *11 (C.D. Cal. July 24, 2023) (denying sanctions motion for failure to comply with safe harbor provision); *see cf. Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005) ("even when the underlying filing is frivolous[,]" failure to comply with the safe-harbor period will result in denial of the motion). Plaintiff's *pro se* status does not change this result. *Taylor v. Starbucks Corp*., No. 24cv1511-RBM-MMP, 2025 WL 97607, at *2 n.2 (S.D. Cal. Jan. 10, 2025) ("While the Court is required to liberally construe Plaintiff's filings because []he is proceeding pro se, the Court notes that []he is required to comply with the Federal Rules of Civil Procedure, this District's Civil Local Rules,[14] and the undersigned's Chambers Rules"); *see Ghazali*, 46 F.3d at 54 ("Although we construe pleadings liberally in their favor, *pro se* litigants are bound by the rules of procedure"); *see, e.g.*, *Dang v. Pontier*, 19-cv-1519-GPC-AHG, 2020 WL 5993914, at *4–*5 (S.D. Cal. Oct. 9, 2020)

---

[14] In addition to failing to comply with the safe harbor provision, by failing to obtain a hearing date before filing his motion, Plaintiff also failed to comply with this district's Civil Local Rules. *See* CivLR 7.1(b) ("All hearing dates for any matters on which a ruling is required must be obtained from the clerk of the judge to whom the case is assigned."); CivLR 7.1(e)(1)–(3) (hearing date secured before filing motion informs the briefing schedule on the motion, as the opposition is due 14 days before the hearing date and reply is due 7 days before the hearing date).

(denying *pro se* defendant's sanctions motion for failure to comply with safe harbor provision, referring to the provision as an "absolute prerequisite").

Nonetheless, as the Court explained during the hearing, after observing the content of the video, it does not find that Defendant's counsel perjured himself. *See* ECF No. 31 at 44. Upon review of the video, Defendant's counsel responded sarcastically when Mr. Strojnik confirmed he was recording a settlement discussion. The Court agrees with Defendant's counsel's explanation at the hearing that his response was akin to "keep doing it because this is going to get you in trouble" as opposed to consenting to the recording, as Plaintiff alleges. *Id.* As such, even if the Court reached the merits, it finds that an order to show cause regarding sanctions against Defendant or its counsel is not warranted. *See Gallusz*, 2025 WL 1476555, at *4 ("Even if a court finds that a [Rule 11] violation has occurred, the imposition of sanctions is discretionary") (citing *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994)).

As such, Plaintiff's motion is **DENIED**.

## V.    CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.    The Court **ORDERS** that Plaintiff pay **$4,500.00** to the "Miscellaneous Fines, Penalties and Forfeitures, Not Otherwise Classified, fund of the United States Treasury" by **December 26, 2025**. *See* CivLR 83.1(b). Plaintiff must mail the payment to Clerk of the Court, 333 West Broadway, Suite 420, San Diego, CA 92101, or pay in person at the Clerk's Office on the Fourth Floor. Checks must be made payable to "Clerk, U.S. District Court," and must provide the case number (3:25-cv-637-TWR-AHG) on the memo line of the check. Plaintiff is ordered to file a Notice of Payment no later than **January 2, 2026**, confirming that he made the required payment.

2.    The Court **ORDERS** that Mr. Strojnik is barred from accompanying Plaintiff to any Court-mandated occurrence in this case, or assisting Plaintiff with this case in any manner, as the Court finds him a threat to the integrity of the proceedings.

3.    Plaintiff's Motion for Sanctions (ECF No. 20) is **DENIED**.

4.      Pursuant to the Order of Transfer Pursuant to Low Number Rule, this matter was transferred to the calendar of Judge Todd W. Robinson and "Magistrate Judge Allison H. Goddard retains jurisdiction regarding the pending Order to Show Cause. As such, the new case number while the Order to Show Cause is ongoing is 3:25-cv-637-TWR-AHG. Upon completion of the Order to Show Cause, the case will be transferred to its new case number of 3:25-cv-637-TWR-LR." ECF No. 26. Since the Order to Show Cause has been resolved, the low number order can take full effect. The Clerk of Court shall **TRANSFER** this matter to Magistrate Judge Lupe Rodriguez, Jr., pursuant to ECF No. 26.

**IT IS SO ORDERED.**

Dated:  November 27, 2025

Honorable Allison H. Goddard
United States Magistrate Judge